## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

**CHRISTOPHER PEMENTAL**

**VS**                                          **C.A. NO.:  16-483S**

**THE BANK OF NEW YHORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE CERTIFICATES, FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES FHAMS 2004-AA5, ALIAS, NATIONSTAR MORTGAGE, LLC,**

## SECOND AMENDED  COMPLAINT

## COUNT I

## BREACH OF CONTRACT

Plaintiff, by his attorney, complains of Defendants as follows:

1.      Plaintiff is a resident of State of Rhode Island with an address of 17 and 19 Stanley Avenue, Barrington, Rhode Island.  Plaintiff owns said real estate located at 17 and 19 Stanley Avenue, Barrington, Rhode Island.

2.      Plaintiff executed a mortgage to Mortgage Electronic Registration Systems, Inc., as nominee for First Horizon Home Loan Corporation on September 7, 2004.

3.      Defendant, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series Bank of New York Mellon ("Bank of New York Mellon") claims to own Plaintiff's mortgage.

4.      Defendant, Nationstar Mortgage, LLC ("Nationstar") is a limited liability company, organized pursuant to the laws of Delaware. It is a

debt collector , which obtained the servicing rights to Plaintiff's mortgage effective April 1, 2014.  The principal business of Nationstar is to collect consumer debts for other entities.

5.     This Court has jurisdiction over this matter due to the removal of the case by Defendants pursuant to Diversity Jurisdiction and Federal statutory jurisdiction, as alleged by the Defendants.  This matter was originally brought in State Court by Plaintifff.

6.     Orlans Moran , PLLC ("Orlans Moran") on February 21, 2015, scheduled a foreclosure sale for Plaintiff's home on April 13, 2015, which as sent to Plaintff.

7.     Pursuant to RIGL 34-27-3.2, any foreclosure notice, commenced by a notice pursuant to RIGL 34-27-4(d), after October 6, 2014, which does not contain a Notice of Mediation, would be void.

8.     Plaintiff  had not received a notice of mediation pursuant to the provisions of RIGL 34-27-3.2 from Bank of New York Mellon or Nationstar or its attorney in conjunction with this attempted foreclosure.

9.     Defendants, through their attorney, Orlans Moran threatened to publish advertisements of a foreclosure sale of Plaintiff's home in the Providence Journal.

10.     Neither Nationstar , John Doe, Bank of New York Mellon, nor any entity acting on their behalf   sent Plaintiff a notice pursuant to the provisions of paragraph 22 of  his mortgage nor have accelerated the note pursuant to the terms of the mortgage.

11.     No default notice has been sent to Plaintiff in form required by paragraph 22 of the mortgage. This section of Plaintiff's mortgage provides that before an acceleration of the loan was declared, the Lender was required to send Plaintiff a separate default notice which shall contain the following language:

**The   notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the**

**date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.**

Paragraph 22 of Plaintiff's mortgage states the following:

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall  mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security**

**Instrument; and (c) any excess to the person or persons legally entitled to it.**

12.     Paragraph 22 of the mortgage, contains conditions for the exercise of the statutory power of sale. Specifically the provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.

13.     Any alleged exercise of the statutory power of sale was defective because a default notice and an acceleration notice were never sent as required by paragraph 22 of the mortgage.

14.     On or after November 8, 2013, the mail vendor of Nationstar caused a purported default notice to be mailed to the Plaintiff.

15.     This notice did not strictly comply with the provisions of paragraph  22 since it does not state that:

**the Borrower  has the right to bring a court action
to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.**

16.     The alleged default notice instead stated:

**You have the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and sale.**

17.     The term foreclosure proceeding relates to Judicial foreclosures, not the exercise of the statutory power of sale.

18.     Plaintiff was not advised that he had a right to bring a Court action, as required by the mortgage.

19.     The notice clearly indicated that the plaintiffs could only take legal action to defend against a judicial foreclosure, which is not the exercise of the statutory power of sale. It did not advise him that they he the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

4

20.    The alleged default notice , for these reasons,  was thus defective and did not comply with the terms of the mortgage.

21.    Any alleged attempt to  exercise  the statutory power of sale to Plaintiff  was defective because a default notice and an acceleration notice were never sent as required by paragraph 22 of the mortgage.

22.    Nationstar never sent the Plaintiff an acceleration notice indicating that the mortgage loan had been accelerated.

23.    Plaintiff's monthly statements indicate that the mortgage loan has never been accelerated.

24.    Defendants knew that they had never transmitted to the Plaintiff any default letter, when they hired Orlans Moran PLLC to send the Plaintiff a Notice of Sale.

25.    Nationstar and Bank of New York Mellon knew that a default letter consistent with the terms of the mortgage had not been mailed to the Plaintiff and that no acceleration letter had been sent to the Plaintiff.

26.    Despite this knowledge, Defendants hired Orlans Moran, PLLC to send the Plaintiff a Notice of Sale on February 21, 2015  pursuant to R.I.G.L. 34-27-4 to exercise the statutory power of sale on April 13, 2015.

27.    The notice from Orlans Moran PLLC  indicated that the Defendants would foreclose under power of sale and by entry onto his premises.

28.    As a result Plaintiff incurred emotional distress due to the letters which were sent to  him by regular mail and certified mail threatening them that his home would be sold.

29.    The Plaintiff became  distressed and nervous and agitated and anxious stressed due to the threat of the  foreclosure sale by defendants.

30.     As a result of the breach of contract, Plaintiff first gained due to the stress and then lost weight.

31.     As a result of the breach of contract, Plaintiff broke up with his girlfriend, diminishing his loss and enjoyment of life.

32.     As a result of the breach of contract, Plaintiff had difficulty sleeping.

33.     Plaintiff lost the ability to concentrate and was unable to effectively manage his rental property business due to the stress.

34      The Plaintiff's mortgage loan accounts also were charged legal fees and costs , attributable to the improper exercise of the statutory power of sale.

35.     The total charges to the mortgage loan account amounted to $2543.94 in   charges to the mortgage loan account attributable to the improper attempt at exercising the statutory power of sale.

36.     An itemization of these improper charges are the following charges improperly charged to their mortgage loan account:

| March 30, 2015 | Orlans Moran | $300.00 |
| March 30, 2015 | Orlans Moran | $626.14 |
| March 30, 2015 | Orlans Moran | $51.30 |
| May 28, 2015 | Orlans Moran | $45.00 |
| May 28, 2015 | Orlans Moran | $365.50 |
| May 28, 2015 | Orlans Moran | $860.00 |
| May 28, 2015 | Orlans Moran | $27.00 |
| May 28, 2015 | Orlans Moran | $27.00 |
| May 28, 2015 | Orlans Moran | $27.00 |
| May 28, 2015 | Orlans Moran | $43.00 |

37.     These charges have not been removed from the mortgage loan account.  They remain on the account as charges applied to the account.

38.     Pursuant to RIGL 34-27-3.2, any foreclosure notice, commenced by a notice pursuant to RIGL 34-27-4(d), after October 6, 2014, which did not contain a Notice of Mediation, will be void.

39.     Plaintiff  never received a notice of mediation pursuant to the

provisions of RIGL 34-27-3.2 from Nationstar,  Bank of New York Mellon or its attorney prior to the Notice of Sale sent to them, dated February 20, 2015.

40.    The failure of the Defendants to comply with paragraph 22 of the mortgage  and RIGL 34-27-3.2 rendered void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability.

41.    The terms of the mortgage provided that the lender or its assignee or servicer acting on behalf of the assignee of the lender could only exercise the statutory power of sale in compliance with Rhode Island state law.

42,    Pursuant to RIGL 34-27-3.2, defendants could not exercise of the statutory power of sale by a notice pursuant to RIGL 34-27-4(d), after October 6, 2014,  without a mediation  notice.

43.    This statute was enacted in July 2014 and gave loan servicers such as Nationstar  more than three months to prepare for the process of preparing mediation notices for consumers , who were delinquent on their mortgages.

44.    Despite the clear language of the statute, Nationstar and Bank of New York Mellon contrary to the terms of the mortgage contract  sought to exercise the statutory power of sale without mediation.

45.    Plaintiff has incurred actual damages as the result of the conduct of the Defendants in not complying with the provisions of RIGL 34-27-3.2.  Plaintiff's  mortgage loan account has been charged legal fees and expenses for postage, legal fees and other costs for a foreclosure sale without providing for mediation as required by the statute.

46.    Plaintiff has incurred legal fees in commencing this action, costs  and expenses due to the conduct of the Defendant in not complying with the provisions of RIGL 34-27-3.2 and the mortgage contract.

47.    R.I.G.L 9-1-45 provides that the Court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:

(1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party;

48.     The language of the mediation statute was clear and concise. There is no justiciable issue of law or fact that the Defendants were not authorized to send the Plaintiff a Notice of Sale on October 22, 2014 seeking to exercise the statutory power of sale without mediation.

49.     Before they filed suit in this case, Plaintiff put Defendants on notice that their actions were contrary to state law and the mediation statute.

50.     A copy of the statute was sent to the Defendants indicating that the statute was not being complied with by them.

51.     On March 13, 2015 an email was sent to the attorney for the Defendants requesting that the foreclosure sale be cancelled.

52.     Despite this warning of the fact that the provisions of R.I.G.L 34-27-3.2 prohibited this activity Defendants refused to cancel the advertising for this sale.

53.     As a result Plaintiffs filed this action and went before Justice Van Coughyen of the Superior Court with a Motion for a Temporary Restraining Order on March 16, 2015.

54.     Defendants were represented by their attorney, Michael Hagopian of Orlans Moran at the Superior Court on March 16, 2015.

55.     Only after the Justice indicated that he was inclined to grant the Restraining Order did the Defendants agree to postpone any advertising for the sale.

56.     Ultimately on May 15, 2015 the Court granted a Preliminary Injunction in regard prohibiting the Defendants and other parties in a consolidated action which prohibited Defendants from exercising the statutory power of sale without mediation.

57.     The conduct of the Defendants, in seeking to exercise the statutory power of sale without complying with the mediation statute was willful, wanton and reckless without regard for the state law enactment or the rights of the Plaintiff.

58.     This disregard of a state statute limiting the exercise of the statutory power of sale was deliberate without excuse, amounting to a deliberate act, not a negligent act.

59.     Nationstar knew of the existence of the mediation statute in June, 2014.

60.     On December 16, 2014 Nationstar and its attorney Michael Hagopian were aware of the position of Justice Van Couyghen, the Superior Court Justice on the Formal and Special Cause Calendar in Providence County,  that mediation was necessary before a Notice of Sale could be sent. On that date Plaintiff's attorney went before the Court on two similar cases, Gonzalo Linares and Blanca Linares v. Bank of New York Mellon National Association PC 2014-6141 and Luis Melgar v. Bank of New York Mellon PC2014-6140.

61.     On that date Attorney Hagopian on behalf of Nationstar in the Linares case.  An attorney from Korde & Associates PC was present in the Luis Melgar case.

62.     Justice Van Couyghen made it clear that he regarded the mediation statute as applicable, which prevented sending a Notice of Sale.

63.     The respective attorneys reported this result to Nationstar.  As a result the Defendants were in December 2014 aware of the existence of the mediation statute.

64.     On January 12, 2015 Plaintiff's attorney went before the Superior Court on another Nationstar case, this one entitled Robin Moorehead v. Bank of New York Mellon PC 2015-0126.

65.     In this case Nationstar as servicer had sent a Notice of Sale for a sale on January 13, 2015without  mediation.

66.     The law firm of Marinosci Law represented Nationstar at this hearing before Justice Van Couyghen for a Temporary Restraining Order.

67.     After the Court made its position clear about the need for mediation, Nationstar agreed to cancel the sale. Eventually a Consent Order was entered.

68.     This law firm advised Nationstar of the need for mediation before sending a Notice of Sale.

69.     In early 2015, a special meeting of the Rhode Island Title Standards committee met to discuss the mediation statute.

70.     Attorney Hagopian, the attorney for the Defendants in this case was a member of that committee.

71.     The Committee advised its members that it was necessary to send notices of mediation before notices of sale were sent to homeowners. Failure to do so,  it advised the title bar of Rhode Island, would result in invalid foreclosures.

73.     Attorney Hagopian advised Nationstar of this title standard.

74.     Nationstar and other loan servicers lobbied the Rhode Island General Assembly, through the Rhode Island Mortgage Bankers Association, Inc.  to amend the law to limit the need for mediation from the legislation.

75.     As a result of this lobbying, on February 25, 2015, House bill 2015-H5617 was introduced, which would remove the right to mediation in the event that the date of default was May 16, 2013 or earlier.

76.     Nationstar was aware of this legislation having been introduced on or immediately after February 25, 2015.

76.     Thus on March 13, 2015, it was fully aware that any Notice of Sale without mediation was invalid.

77.     Plaintiff incurred the actual damages alleged in this complaint as a result of this conduct of the Defendants.

78.     Plaintiff is entitled to punitive damages and legal fees arising from this wanton conduct without regard for the rights of the Plaintiff and in utter disregard of state law and the mortgage contract.

WHEREFORE, Plaintiff demands Judgment against Defendants for

a.      actual damages arising from the breach of contract including but not limited to pain and suffering and medical bills incurred by the Plaintiffs attributable to the Defendants' seeking to exercise the statutory power of sale.

b.      actual damages for the improper charges to the mortgage loan account in the amount of $2543.94

c.      Punitive damages for the willful, wanton and reckless conduct of the Defendants.

d.      Legal fees attributable to the wanton conduct of the Defendants.

e.      Legal fees pursuant to R.I.G.L.§ 9-1-45.

CHRISTOPHER PEMENTAL
By his Attorney

September 21, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ., #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

## COUNT II

## VIOLATION OF THE COVENANT OF GOOD FAITH AND DEALING

79.     Paragraphs 1- 78 are incorporated by reference.

80.     The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

81.    The mortgage contract in paragraph 22 incorporates the Rhode Island Statutory Power of Sale.

82.    The Statutory Power of Sale could only be invoked by sending Plaintiff the following documents:

   a.    A default letter pursuant to the term of the mortgage was required to be sent by the lender to the mortgagor.

   b.    A subsequent acceleration letter from the lender to the Plaintiff was required to be sent.

   c.    A Notice of Foreclosure was required to be sent pursuant to R.I.G.L. 34-27-4 only after a Notice of Mediation had been sent to the mortgagor pursuant to R.I.G.L. 34-27-3.2.

83.    Bank of New York Mellon and Nationstar violated the covenant of good faith and dealing by scheduling a foreclosure in violation of 34-27-3.2 and seeking to exercise the statutory power of sale without the lender having first sent  a default notice to the Plaintiff pursuant to the term of the mortgage as alleged and without having sent an acceleration letter pursuant to the terms of the mortgage.

84.    The failure to send a default letter, an acceleration letter in the manner required by the terms of the mortgage and a mediation letter as required by the statute were actions taken contrary to the contractual obligations of the parties.

84.    As a result of the Plaintiff has incurred the following damages:

   a.    He incurred the cost of filing this action in the form of filing fees and service fees, incurred on March 16, 2015 in order to stop the foreclosure, which was in violation of R.I.G.L. 34-27-3.2 and the terms of the mortgage;

   b.    He has incurred attorney fees and costs to obtain a Temporary Restraining Order to stop the illegal foreclosure.  His fee agreement with their attorney

provides that he  will be responsible for legal fees
expenses incurred in regard to this action

    c.     He has incurred attorney fees and costs for the
prosecution of this action.

    d.     He has incurred actual damages as alleged in this
complaint.

85.    The conduct of  Bank of New York Mellon and Nationstar was
willful, wanton and reckless, warranting the imposition of punitive damages
and legal fees.

86.    These defendants ignored the clearly stated Rhode Island law
mandating mediation, but instead went forward and sought to exercise the
statutory power of sale  without mediation.

WHEREFORE, Plaintiff demands Judgment against Defendants for

    a.     actual damages arising from the breach of contract including
but not limited to pain and suffering  incurred by the Plaintiff attributable to
the Defendants' seeking to exercise the statutory power of sale.

    b.     actual damages for the improper charges to the mortgage loan
account in the amount of $2543.94.

    c.     Punitive damages for the willful, wanton and reckless conduct
of the Defendants.

    d.     Legal fees attributable to the wanton conduct of the Defendants.

    e.     Legal fees pursuant to R.I.G.L.§ 9-1-45.

CHRISTOPHER PEMENTAL
By his Attorney

September 21, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ., #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

# COUNT III

## COMPLAINT  FOR INJUNCTIVE  RELIEF

87.    Paragraph 1-86 are  incorporated by reference.

88.    Plaintiff has incurred damages and legal fees and costs for the prosecution of this action.

89.    As previously alleged, Defendants have not sent the Plaintiff a default letter in the form required by paragraph 22 of the terms of the mortgage followed by an acceleration letter pursuant to the terms of the mortgage.

90.    The prior conduct of the Defendants in ignoring the mediation statute and seeking to exercise the statutory power of sale demonstrates that the Defendants will seek to exercise the statutory power of sale without complying with the terms of the mortgage.

91.    Plaintiff will be irreparably harmed if Defendants seek to exercise the statutory power of sale and sell his home.

92.    Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

93.    The failure of the Defendants to comply with paragraph 22 of the mortgage renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability.  This demonstrates that Plaintiff has a substantial likelihood of success.

94.     Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiffs irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants.

95.     Such relief sought by Plaintiff will not disserve the public interest if imposed.

96.     This property is Plaintiff's home, where he lives.

WHEREFORE, Plaintiff demands that this Court:

a.     Grant a  Preliminary Injunction Restraining and Enjoining Nationstar or Bank of New York Mellon and any other entity,  acting on their  behalf,  from exercising the statutory power of sale or sending a Notice of Sale pursuant to R.I.G.L 34-27-4 at 17-19 Stanley Avenue, Barrington, Rhode Island, pending a hearing on a Permanent Injunction

b. Preliminarily and Permanently  Restrain and Enjoin Nationstar or Bank of New York Mellon and any other entity,  acting on their  behalf, from exercising the statutory power of sale or sending a Notice of Sale pursuant to R.I.G.L 34-27-4 at 17-19 Stanley Avenue, Barrington, Rhode Island,  and any other entity,   without sending the Plaintiff a default notice and acceleration notice as required by the terms of the mortgage.

c.     Grant all other just and proper relief.

CHRISTOPHER PEMENTAL
By his Attorney

September 21, 2017

/s/ John B. Ennis
JOHN B. ENNIS, ESQ., #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

## COUNT IV

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY Bank of New York Mellon'S FAILURE TO SEND THE PLAINTIFF AN ACCURATE MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

97.     Paragraphs 1-96 are incorporated by reference.

98.     This is an action for damages brought by the Plaintiff, who is a consumer,  for Bank of New York Mellon's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

99.     Specifically, Plaintiff seeks the remedies provided in TILA for Defendants' failure to send the Plaintiff accurate monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

100.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

101.   The Defendant, Nationstar is a limited liability company that services residential mortgage loans.  Nationstar claims to be the servicer of the mortgage loan, which is the subject of this complaint

102.   Bank of New York Mellon asserts that it is the owner of the mortgage note and mortgage loan.

103.    The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

104.    Plaintiff has been regularly sent monthly statements since he was discharged in bankruptcy.

105.    Nationstar has never sent the Plaintiff a  monthly statement in compliance with 12 C.F.R. 1026.41. This failure to send accurate statements continues each month.

106.    Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Bank of New York Mellon was required to send the Plaintiffs a monthly mortgage statement that provides the following information:

(**d**)  *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:
(**1**)  *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:
(**i**)  The payment due date;
(**ii**)  The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
(**iii**)  The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.
(**2**)  *Explanation of amount due.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:
(**i**)  The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;
(**ii**)  The total sum of any fees or charges imposed since the last statement; and
(**iii**)  Any payment amount past due.
(**3**)  *Past Payment Breakdown.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:
(**i**)  The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal,

interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)**  The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.*  A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.*  If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.*  A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.*  The following information:

**(i)**  The amount of the outstanding principal balance;

**(ii)**  The current interest rate in effect for the mortgage loan;

**(iii)**  The date after which the interest rate may next change;

**(iv)**  The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

**(v)**  The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.*  If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

**(i)**  The date on which the consumer became delinquent;

**(ii)**  A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

(**iii**)  An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

(**iv**)  A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

(**v**)  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

(**vi**)  The total payment amount needed to bring the account current; and

(**vii**)  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

107.    However none of the statements which have been sent to Plaintiff by Nationstar have been inconformity with Regulation Z.

108.    Since no default letter has been sent to the Plaintiff in the form required by the terms of the mortgage and no acceleration letter has ever been sent to the Plaintiff,  any fees for legal charges, advertising and mailing by attorneys relating to the statutory power of sale cannot be listed as fees or expenses in  the  periodic statements sent to the Plaintiff.

109.    On February 17, 2012, $817.44 of legal fees and costs for foreclosure were billed to the mortgage loan account for foreclosure services by Orlans Moran.

110.    On July 31, 2013, $1902.80 of legal fees and costs for foreclosure were billed to the mortgage loan account for foreclosure services by Orlans Moran.

111.    As a result, when the servicing of this mortgage loan was transferred to Nationstar, this improper fee remained part of the mortgage account escrow balance.

112.    This resulted in all monthly periodic statements from the time Nationstar commenced servicing of the mortgage loan being inaccurate as to the amount for principal, interest and escrow.

113.  The Plaintiff's mortgage loan account has been charged $2543.94 in   charges to the mortgage loan account attributable to the

improper attempt at exercising the statutory power of sale by the February 21, 2015 Notice of Sale letter sent to the Plaintiff.

114.   These charges have never been removed from the mortgage loan account and are reflected in each of the monthly periodic statements transmitted to Plaintiffs since August 20, 2015.

115.   In all of the monthly  periodic statement sent to the Plaintiff since August 20, 2015, Nationstar has charged the Plaintiff for property inspection charges of $15.00 monthly.

138.   These charges on the last statement received by the Plaintiffs on August 18, 2017 reflect total charges for property inspections of $1231.56.

139.   The monthly charging of property inspection fees and expenses is neither reasonable nor necessary.

140.   The amount charged for these property inspection fees is not consistent with the actual cost of such purported inspection nor consistent with the amount actually paid to the property inspection vendor.

141.   Defendants have known that this matter is in litigation, that the Plaintiff lives in the house and that it is not vacant and that he has submitted loss mitigation applications seeking a loan modification.

142.   Such charges were inaccurately reported on all of the periodic monthly statements since August 20, 2015.

143.   The prior foreclosure legal fees charged to the mortgage loan account have resulted in inaccurate principal and interest balances and monthly payments due in each of the periodic monthly statements mailed to the Plaintiffs since August 20, 2015.

144.    On all periodic monthly statements sent to the Plaintiff since August 20, 2015, the Plaintiff was charged $200.00 for maintenance

145.   No maintenance was done at the Plaintiff's property. This charge was unreasonable and unnecessary and should have charged to his mortgage loan account.

146.   As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, Bank of New York Mellon is liable for actual damages and statutory damages of up to $4,000.00 for each of the  inaccurate statements, which were sent to the Plaintiff since August 20, 2015 and were not in conformity with 12 C.F.R. 1026.41 and TILA.

147.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

a.      He has incurred costs for gasoline to visit his attorney on at least six occasions, driving to his attorney's office for a round trip totaling  35.4 miles.  The IRS standard mileage allowance provides for .56 per mile.

b.      He has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

c.      He has incurred actual damages  by the improper fees charged to his mortgage loan account, as alleged in this complaint..

d.       Due to the incorrect escrow balance and other fees placed on the mortgage loan resulting in an incorrect amount of the mortgage balance by Nationstar, the Plaintiff cannot obtain a loan modification.

f.      He has  incurred attorney fees and costs for the prosecution of this action. His  fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

WHERFORE,   Plaintiff demands Judgment against Bank of New York Mellon for  statutory damages of at least $4,000.00, for each failure to send a monthly mortgage statement in conformity with TILA since June 29, 2015 plus actual damages, plus attorney fees and costs and all other just and proper relief.

CHRISTOPHER PEMENTAL

September 21, 2017                    By his Attorney


/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com


## COUNT V

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY NATIONSTAR

148.   Paragraphs 1-143 are incorporated by reference.

144.   Nationstar is a debt collector as defined by 15 U.S.C. § 1692 et seq. It regularly collects debts for other entities. In fact it regularly referenced itself as a debt collector in all its communications with the Plaintiffs.

145.   Nationstar  is a limited liability company, whose primary business is the collection of debts due to the other entities.

149.   At the time Nationstar commenced servicing Plaintiff's mortgage loan, it was delinquent and Nationstar treated it as if it were in default.

150.   Nationstar since August 20, 2015 has committed several violations of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

151.   Nationstar has used multiple followings unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiffs.

152.    In every periodic statement since August 20, 2015,  Nationstar has incorrectly stated the amount due for principal, interest, escrow and all fees as alleged earlier in this complaint.

153.   Each violation of the FDCPA have occurred within one year of the filing of the amended complaint and relate back to that date.

154.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

    a.    He has incurred costs for gasoline to visit their attorney on at least six occasions, driving to his attorney's office for a round trip totaling 35.4 miles.  The IRS standard mileage allowance provides for .56 per mile.

    b.    He has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

    c.    He has incurred actual damages by the improper fees charged to his mortgage loan account, in 2012, 2013 and 2015 as alleged in this complaint.

    d.    He has   incurred attorney fees and costs for the prosecution of this action.  His fee agreement with their attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

    WHEREFORE, Plaintiff demands that this Court grant them the following relief:

    a.    Judgment against Nationstar for actual damages as alleged in this complaint, and statutory damages of $1,000.00 for each violation of the FDCPA.
.
    b.    Judgment against Nationstar for legal fees and costs.

    c.    All other just and proper relief.

CHRISTOPHER PEMENTAL

September 21, 2017                              By his Attorney


/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com


Plaintiff demands a Trial by Jury